```
 1              IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF MARYLAND
 2                    SOUTHERN DIVISION

 3  _____
                                    )
    UNITED STATES OF AMERICA        )
 4                                  )
         v.                         )  Case No. 8:20-cr-00374-PWG-1
 5                                  )
    BRIAN ANTHONY GILBERT,          )
 6                                  )
                    Defendant.      )
 7  _____)

 8                             Greenbelt, Maryland
                               September 7, 2021
 9                             3:08 p.m.

10

11                  REARRAIGNMENT AND PLEA

12          BEFORE THE HONORABLE PAUL W. GRIMM

13

14              A P P E A R A N C E S

15  On Behalf of the Government:

16      OFFICE OF THE UNITED STATES ATTORNEY
        DISTRICT OF MARYLAND
17      6500 Cherrywood Lane, Suite 200
        Greenbelt, Maryland  20770
18      BY:  JOSEPH RONALD BALDWIN, ASSISTANT U.S. ATTORNEY
             (301) 344-4238
19           joseph.baldwin@usdoj.gov

20      U.S. DEPARTMENT OF JUSTICE
        1301 New York Avenue, N.W., 11th Floor
21      Washington, D.C.  20005
        BY:  ALICIA A. BOVE, ASSISTANT US ATTORNEY
22           (202) 699-1134
             alicia.bove@usdoj.gov
23

24

25                      (Continued)
```

1          A P P E A R A N C E S

2     On Behalf of the Defendant:

3          OFFICE OF THE FEDERAL PUBLIC DEFENDER
           100 S. Charles Street
4          Tower II, 9th Floor
           Baltimore, Maryland  21201
5          BY:  ELIZABETH GENEVIEVE OYER
                ASSISTANT FEDERAL PUBLIC DEFENDER
6               (410) 962-3962
                liz_oyer@fd.org

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23              PATRICIA KLEPP, RMR
                Official Court Reporter
24          6500 Cherrywood Lane, Suite 200
              Greenbelt, Maryland  20770
25                (301) 344-3228

1                    P R O C E E D I N G S

2        (Call to order of the Court.)

3            THE COURTROOM DEPUTY:  May I have your attention,

4    please.  The United States District Court for the District of

5    Maryland is now in session, the Honorable Paul W. Grimm

6    presiding.

7            THE COURT:  All right, everyone.  Good afternoon.

8            MS. OYER:  Good afternoon, Your Honor.

9            MR. BALDWIN:  Good afternoon, Your Honor.

10           THE COURT:  We are here in the case of United States

11   versus Brian Anthony Gilbert, which is Case No. PWG-20-374.

12           Counsel identify themselves for the record, please.

13           MR. BALDWIN:  Good afternoon, Your Honor.

14   Joseph Baldwin and Alicia Bove for United States.  Ms. Bove is

15   the attorney from main justice of CEOS.

16           THE COURT:  All right, thank you.  And on behalf of

17   Mr. Gilbert.

18           MS. OYER:  Good afternoon, Your Honor.  Liz Oyer for

19   Brian Gilbert, who's present to my right, and I also want to

20   note that Mr. Gilbert's father, Arthur Gilbert, is present in

21   the courtroom today as well.

22           THE COURT:  All right.  Thank you very much.

23           Mr. Baldwin -- and is it -- hold on one second; let me

24   just check this real quick.  I can't read this handwriting.

25   What is your last name, ma'am?

1      MS. BOVE:  Yes, Your Honor, it's Ms. Bove, B-O-V-E.

2      THE COURT:  Bove, all right, thank you.

3      Ms. Bove, Mr. Baldwin, whoever's going to be speaking

4  for the government, if you've been vaccinated, it's been more

5  than two weeks since your last vaccine, and you're feeling well,

6  you can remove your mask, but choke up on the microphone,

7  because if you get even a few inches away, it's very, very hard

8  to hear.  Same for you, Ms. Oyer.  Obviously, if you want to

9  wear your mask, of course, you can, but just speak loudly and

10  closely to the microphone so that you can be heard and our

11  court reporter can get a good transcript.

12      Mr. Gilbert, before I can accept your plea of guilty,

13  sir, to these charges, I have to ask you quite a few questions.

14  Your answers must be under oath and on the record.  So you can

15  remain seated and stay comfortable throughout these proceedings,

16  but I do need you to raise your right hand, and our Courtroom

17  Deputy will give you the oath.

18      THE DEFENDANT:  Okay.

19      THE COURT:  Just raise your right hand, sir, and when

20  it's done with the oath, you can put it down, sir.

21      THE COURTROOM DEPUTY:  You do solemnly promise and

22  declare under the penalties of perjury that the information you

23  are about to give to the Court in the matter now pending before

24  it shall be the truth, the whole truth, and nothing but the

25  truth?

```
1              THE DEFENDANT:  Yes.

2              THE COURTROOM DEPUTY:  Please state your full name for

3    the record.

4              THE DEFENDANT:  What's she saying?

5              MS. OYER:  State your full name.

6              THE COURT:  Please state your full name for the

7    record.  You can put your hand down, sir.  Put your hand down.

8    Be comfortable.

9              Let me try it this way.  All right.  Can you hear me

10   all right, Mr. Gilbert?

11             THE DEFENDANT:  A little bit, yeah, I can hear you.

12             MS. OYER:  Your Honor, I apologize.  I should have

13   noted, Mr. Gilbert is deaf in his right ear.  He is able to

14   hear, but he is slightly hard of hearing as a result of that.

15             THE COURT:  Got it.  Is this better, Mr. Gilbert, if I

16   talk like this?  Can you hear me better this way, sir?

17             THE DEFENDANT:  Yes.

18             THE COURT:  All right.  Is your name

19   Brian Anthony Gilbert?

20             THE DEFENDANT:  Yes.

21             THE COURT:  All right.  Mr. Gilbert, how many years

22   old are you, sir?

23             THE DEFENDANT:  Twenty-three.

24             THE COURT:  And how far have you gone in school, sir?

25             THE DEFENDANT:  How far?
```

1          THE COURT:  How far in school have you gone?

2          THE DEFENDANT:  Through tenth.

3          THE COURT:  Okay.  The letter that was written to your

4    lawyer, that contained the conditions of the plea agreement that

5    you signed, and the statement of facts, are written in English.

6    Were you able to read the letter and the statement of facts and

7    understand it before you signed it?

8          THE DEFENDANT:  Yes.

9          THE COURT:  All right.  Did you have enough time to

10   talk to Ms. Oyer, your attorney, and make sure that this was the

11   right thing for you to do before you signed it?

12         THE DEFENDANT:  Yes.

13         THE COURT:  All right.  Is anyone trying to force you

14   to plead guilty against your will?

15       (Conference between Ms. Oyer and the defendant.)

16         THE COURT:  Thanks, Ms. Oyer.

17         THE DEFENDANT:  Okay, repeat that?

18         THE COURT:  Sure.  Is anyone trying to force you to

19   plead guilty against your will?

20         THE DEFENDANT:  No.

21         THE COURT:  Sir, do you have any medical or physical

22   condition that would prevent you from understanding what I'm

23   explaining to you today?

24         THE DEFENDANT:  (Shaking head.)

25         THE COURT:  You're pausing; can you understand what

1    I'm saying so far?

2              THE DEFENDANT:  Yes.

3              THE COURT:  All right.  And do you take any medication

4    or anything that would make you confused or unable to understand

5    me?

6              THE DEFENDANT:  No.

7              THE COURT:  Okay.  Any questions that you have,

8    Ms. Oyer, on capacity?

9              MS. OYER:  No, Your Honor, none.

10             THE COURT:  All right.  This is kind of a -- it's a

11   complicated plea agreement, so I'm going to go through it slowly

12   and go through it one step at a time.

13             The agreement says that you're pleading guilty to

14   three separate charges, Count Three, Count Six and Count Nine of

15   the indictment.  Now, it's written on that piece of paper on

16   Page 1.  If you follow along with me, I'll go over it with you.

17   We'll go page by page so that we can do it together.  All right,

18   sir?

19             THE DEFENDANT:  Okay.

20             THE COURT:  All right.  Count Three and Six charge

21   Production of Child Pornography in violation of 18 U.S. Code

22   2251(a); Count Nine charges Possession of Child Pornography in

23   violation of 18 U.S. Code 22529(a).

24             If this case were to go to trial, Mr. Gilbert, for

25   Count Three, production of child pornography, this is what the

government would have to prove:  In or about the time listed in

the indictment here in the District of Maryland, that you,

number one, knowingly employed, used, persuaded, induced,

enticed, or coerced the victim to take part in sexually explicit

conduct as defined under the statute for the purpose of

producing a visual depiction of such conduct; (2) that the

victim was a minor; and (3), that you knew or had reason to know

that the visual depiction would be transported or transmitted,

using any means or facility of interstate or foreign commerce,

or in or affecting interstate or foreign commerce, and that the

visual depiction was produced or transmitted using materials

that had been mailed, shipped, or transported in or affecting

interstate commerce, by any means, that include a computer, or

such visual depiction was actually transported or transmitted

using any means or facility of interstate or foreign commerce or

in or affecting interstate or foreign commerce.

          Count Six is the same.

          Count Nine, the elements are that you knowingly

possessed material containing an image of child pornography as

defined by the law, including an image involving a prepubescent

minor and minor under the age of 12; (2) the child pornography

was, again, mailed, shipped, transported, using any means of

interstate or foreign commerce, or in or affecting interstate or

foreign commerce, or was produced by using materials mailed,

shipped, or transported in interstate or foreign commerce by any

1    means, which include a computer; and (3) that you knew of the

2    sexually explicit nature of the material, and the visual

3    depiction was of an actual minor engaged in sexually explicit

4    conduct.

5           Now, on Page 2, Paragraph 3, a person who is found

6    guilty of the charges in Count Three and Count Six, the

7    production of child pornography, faces a mandatory minimum

8    period in prison of at least 15 years, a maximum of 30 years'

9    imprisonment, supervised release of at least 5 years but no more

10   than life, a fine of no more than $250,000, and special

11   assessments that could be -- that are mandatory, $1,000 [sic],

12   plus a possible additional 5,000, or $50,000 on top of that,

13   depending upon ability to pay.

14          MR. BALDWIN:  Your Honor, I'm sorry, you just said a

15   mandatory 1,000 --

16          THE COURT:  100.

17          MR. BALDWIN:  -- yeah, instead of 100.

18          THE COURT:  Yeah, mandatory 100.  And that mandatory

19   minimum, the statutory maximum, the mandatory 5 years to life

20   supervised release, the maximum fine, and the special assessment

21   are the same for Counts Three and Six.

22          For Count Nine, the Possession, there is no mandatory

23   minimum.  The maximum imprisonment is 20 years.  Again, maximum

24   of life imprison- -- excuse me, a maximum of lifetime supervised

25   release, but at least 5 years' supervised release, a fine of no

1   more than $250,000, a mandatory special assessment of $100, and

2   possibly an additional $5,000 and $17,000 special assessment,

3   depending upon ability to pay.

4          Now, these materials I have just read to you are on

5   Pages 1 and 2 of the letter that you have previously read and

6   signed.  Before I talk to you about your rights, do you

7   understand the charge against you --

8          THE DEFENDANT:  Yes.

9          THE COURT:  -- the elements that would have to be

10  proved by the government, and the possible statutory punishments

11  that could be imposed?  Do you understand those, sir?

12         THE DEFENDANT:  Yeah, I guess.

13         THE COURT:  All right.  Now, I want to talk about your

14  important constitutional rights.  I know Ms. Oyer has explained

15  these to you, but I want to have that conversation with you now.

16         Go to Page 3, at the bottom, if you would, please,

17  Mr. Gilbert.

18         THE DEFENDANT:  Mm-hmm.

19         THE COURT:  All right.  Number one, you are presumed

20  to be innocent under law, unless the government proves guilt

21  beyond a reasonable doubt.  You have no obligation or burden to

22  prove anything.  You do not have to prove your innocence.  The

23  law says you are innocent unless the government proves you

24  guilty.  That's number one, all right.

25         Number two, they must prove you guilty beyond a

1    reasonable doubt.

2            Number three, you cannot be forced against your will

3    to make a statement that would help the government prove the

4    charges against you involuntarily; you can't be forced to do

5    that.  That's the right not to incriminate yourself.

6            Next, you have a right to a lawyer free of charge if

7    you do not have the money to hire a lawyer, and the lawyer will

8    represent you at all critical phases of a prosecution, and that

9    includes a trial and an appeal, not just a guilty plea.

10           You have the right to a jury trial.  In fact, we don't

11   have trials in felony cases in federal court before a judge only

12   unless both the defendant and the government ask for just a

13   judge, and that almost never happens.  So you have the right to

14   a jury trial, which means, the people who hear the evidence and

15   decide whether the government met its burden of proof are

16   members of the community, picked from people qualified to vote

17   in the counties that make up the Southern District of the State

18   of Maryland and who are selected in open court with the help of

19   the defendant and the defendant's lawyer.

20           When there is a jury being picked for a trial, the

21   Court enters the summons, it orders people, about 50 to 70, to

22   be brought from the rolls of those people qualified to vote in

23   the counties in the Southern District of Maryland,

24   Prince George's County, Montgomery County, Calvert, St. Mary's,

25   and Charles Counties.  They're brought into the court.  They're

1    given an oath to answer qualification questions truthfully.

2         The lawyers submit the proposed questions to the judge

3    to ask each member of the panel.  Any panel member who answers a

4    question in a way that shows they can't be fair and impartial to

5    both you and the government can't serve on the jury.  They're

6    eliminated for cause.  When the eliminations for cause are done,

7    the defendant can remove up to ten additional people from the

8    jury pool.  The government can remove up to an additional six.

9    These are called peremptory challenges.  The only limit is, you

10   can't remove someone because of their race, national origin,

11   religious beliefs, things of that nature.

12        Once the strikes have been issued, then the defendant,

13   and his lawyer, and the government, and their lawyers, pick the

14   12 jurors and the one alternate for each week of trial who will

15   hear the case, and they are then sworn again to be fair and

16   impartial.  The trial starts.

17        The government has the burden of proof and must call

18   witnesses to testify in your presence, in that chair directly

19   opposite you, so that you can see them and they can be

20   questioned under oath by Ms. Oyer.  Any witness the government

21   calls has to go through that process; it's the right to confront

22   the witnesses against you.

23        All right.  If the government introduces other

24   evidence, videos, electronic evidence, things that they're

25   seized in the search warrant, the defendant can object, and the

1    judge has to decide if the jury can hear the evidence.

2             When the government says they have no more evidence to

3    offer, then at that time, the defendant has a choice to make.

4    Because you are presumed innocent, have no burden of proof, you

5    are not obligated to testify or produce any evidence at all, and

6    you can decline to do so, and I would instruct the jury that

7    they could not hold that against you in any way.

8             If you decide that you want to testify, then you have

9    a right to testify under oath and subject to cross-examination,

10   and if you want witnesses to come testify on your behalf, your

11   lawyer, Ms. Oyer, would give me a list of those people, and I

12   would issue an order requiring them to come into court and give

13   truthful testimony on your behalf, subject to cross-examination.

14   If you chose to present a defense, the government would have the

15   ability to enter a rebuttal, and as for the rebuttal, any

16   witness is subject to cross-examination and must testify under

17   oath in your presence.

18            When all the evidence is done, the judge instructs the

19   jury on the law that they must apply to the facts that they

20   find, the lawyers argue to the jury what they think has or has

21   not been proved, and at that time, the jury goes and

22   deliberates, in secret.  The jury cannot return a verdict of

23   guilty on any of the charges unless, for each charge, the jury

24   finds beyond a reasonable doubt the government proved the

25   elements of proof that I just went over with you.

1          This is what is meant by a jury trial.  If a

2   defendant's found guilty by a jury, the defendant has a right to

3   appeal, without any limitation on the grounds of appeal.

4          Do you understand these rights to a jury trial as I

5   have explained it and as are written on Pages 3 and 4 of the

6   agreement?

7          THE DEFENDANT:  Yes.

8          THE COURT:  All right.  Now, Mr. Gilbert, why am I

9   going through all that with you?  Because when you plead guilty,

10  you give up these rights.  A guilty plea waives the right

11  against self-incrimination.  A guilty plea admits guilt.  A

12  guilty plea means that there is no witness who will testify

13  subject to cross-examination.

14          Instead, Ms. Bove will give a statement of facts that

15  will be read into the record.  It's the statement of facts

16  you've already seen and signed.  A guilty plea means that there

17  will be no witnesses who will come and testify, and a guilty

18  plea means that the only information the judge can consider is

19  the statement of facts supporting the guilty plea.  And under

20  this guilty plea, there's a limited right to appeal that I will

21  explain to you in just a minute.

22          So do you understand, Mr. Gilbert --

23          THE DEFENDANT:  Yes.

24          THE COURT:   -- that by pleading guilty, sir, you are

25  giving up these important rights; do you understand that?

```
1              THE DEFENDANT:  Yes.

2              THE COURT:  All right, sir.

3         In addition to pleading guilty and facing a possible

4    period of imprisonment, there can be other consequences.  A

5    person who is found guilty may not be eligible to vote, run for

6    public office, serve on a jury, they may not be eligible for

7    federal benefits, and if they're not an American citizen, they

8    may be subject to being deported from the country.

9         Do you understand that there can be additional

10   consequences to someone who pleads guilty and is found guilty

11   beyond just the prison sentence; do you understand that?

12             THE DEFENDANT:  Yes.

13             THE COURT:  All right.  Now, we're going over to

14   Page 5.  Before we get there, Mr. Gilbert, let me just tell you

15   what we're going to try and do here.  A minute ago, I told you

16   that there were some mandatory minimums and statutory maximums

17   for Counts Three, Six, and Nine, and that there was no mandatory

18   minimum for Count Nine, just a maximum.

19        Now I want to talk to you about how the sentence that

20   will be recommended in this case will be calculated, and here's

21   how the process works.  There are three charges you're pleading

22   guilty to.  There's a ranking system created by the sentencing

23   guidelines that gives the judge a numerical score for each of

24   the charges that the defendant is found guilty of.

25        There's a score for the offense level, which is how
```

1  serious is the crime, and that score can be a low of 1 to a high

2  of 43, and there's a score for the criminal history, which means

3  how many times in the past has the defendant been found guilty.

4  All right?

5          The judge calculates those scores based upon

6  information provided by the probation officer, who prepares a

7  presentence report, and the guidelines recommend a sentence to

8  the judge.  Now, the judge can follow that recommendation but

9  does not have to.  The judge can give a sentence below the

10 guidelines and depart below the guidelines if the guidelines

11 would permit that, and the judge can vary below or above, just

12 as well as depart above or below, and vary dependent upon

13 sentencing factors that include the nature of the offense, the

14 history and circumstances of the defendant, the need to respect

15 the law, the need to deter the defendant and others, the need

16 for treatment, the recommendation of the guidelines.

17         So the judge has discretion in what the sentence is,

18 but the judge must first calculate what the ranking is, based

19 upon the offense level and the criminal history of the

20 guidelines.

21         The next several pages of that letter have certain

22 agreements and disagreements about how those offense level

23 points will be added up, and here's what I mean by that.  In

24 some instances, there's an agreement between you and the

25 government as to what numerical score will be included in adding

1      up the final offense level for the three charges, but in other

2      areas, the government's going to say no, we think we should add

3      some additional points, and your position is, no, I don't agree

4      about that.  Those are disputed, and they'll stay disputed until

5      the time of the sentencing, when I'll have to resolve those

6      disputes.

7              So part of the calculation is agreed upon, but part of

8      it gives you the right to not agree.  Ms. Oyer will argue that,

9      and then based upon the information at the sentencing, I'll have

10     to resolve any disputes.

11             So before I go into the numbers, I wanted you to

12     understand how they were all arrived at in this plea agreement.

13     Do you understand what I've said so far?

14             THE DEFENDANT:  Yes.

15             THE COURT:  All right, sir.

16             Count Three, Production of Child Pornography.  The

17     agreed base offense level is 32.  There is an agreement to add 4

18     points because the victim had not reached the age of 12.

19     There's an agreement to add 2 points because the offense

20     involved a sexual act or sexual contact.  There is an agreement

21     to add 2 points because you knowingly engaged in distribution.

22     The total now on those, added up, adds up to 40.

23             For Count Six, there's some agreement and some

24     disagreement.  For Count Six, which also is production of child

25     pornography, it's agreed that the base level is 32.  4 points,

1    it's agreed, are added because the victim -- or the offense

2    involved a minor under the age of 12.  It's agreed that 2 points

3    are added because the offense involved a sexual act or sexual

4    contact.  It's agreed that 2 points are added because you

5    knowingly engaged in distribution.  The United States will argue

6    that 4 more points are added because the offense involved

7    material that portrays an infant or a toddler.  You object and

8    will argue that does not apply.  I will have to decide at the

9    time of the sentencing.

10             Now, the arithmetic on Count Six is, it's agreed that

11   it's going to be at least a 40, but the government's going to

12   argue it's a 44, and I will have to resolve that dispute.

13             For Count Nine, possession of child pornography,

14   again, there's agreed arithmetic and arithmetic that's not

15   agreed to.  It's agreed that the base offense level is an 18.

16   It's agreed that 2 points are added because the material

17   involved a prepubescent minor or minor who had not yet reached

18   age 12.  It's agreed that 2 levels are added because you

19   knowingly engaged in distribution, and it is agreed that 4

20   levels are added because the offense involved material that

21   portrays sadistic or masochistic conduct.

22             Here's the disagreement.  The United States believes

23   that 5 more points should be added because you engaged in a

24   pattern of activity involving the sexual abuse and exploitation

25   of a minor.  Your position is, these 5 points do not apply.

```
1    It's agreed that 2 points are added because a computer or other
2    interactive computer service was used for the possession, and
3    it's agreed that 5 points are added because there were more than
4    600 images.
5              The government's going to say for Count Nine that the
6    number, the final offense level, is a 38.  Your lawyer,
7    Ms. Oyer, is going to argue it's only a 33.  I will have to
8    resolve that dispute.
9              Now, for each of these counts, whatever the final
10   tally is for the offense level, the government agrees that we
11   subtract 3 points, because you have accepted responsibility by
12   pleading guilty.  And that means that -- 2 points because you're
13   pleading guilty, and 1 point because you've done so promptly.
14   So that means that whatever the final total is for Counts Three,
15   Six, and Nine, for each of those counts, there will be a
16   subtraction of three points, based upon acceptance of
17   responsibility.
18             Now, again, there's -- the government is going to take
19   the position that we have to add 5 more points because the
20   offense level, determined under Chapters Two and Three, because
21   the defendant's offense of conviction is a covered sex crime,
22   and neither -- two other provisions of the guidelines apply, and
23   that you engaged in a pattern of activity involving prohibited
24   sexual conduct.  Your position's going to be that that 5 level
25   doesn't apply.  I'll resolve it.
```

1          So the maximum offense level, if the total numerical

2    total for each count individually is 43 or more, it will be

3    reduced to a 43, because 43 is as high as the numbers go, and

4    there's no agreement as to your criminal history.

5          Finally, there is no agreement about whether or not

6    these three charge as a group.  So there's going to be a whole

7    lot of disagreement about how to calculate the guidelines that

8    I'll have to resolve at the time of the sentencing, but there

9    are agreements as to some aspects of it, and there is no

10   agreement as to your criminal history.  Like I said, that's a

11   little bit unusual, but that's all right, that's agreed upon.

12   You have some that you agree upon, some you don't; I'll have to

13   resolve the ones you don't agree on, but this is done to give

14   your lawyer the opportunity to argue that some of the

15   enhancements that the government wants to add do not apply.

16          Do you understand that, sir?

17          THE DEFENDANT:  (Nodding.)

18          THE COURT:  You have to answer so I can hear you.

19          THE DEFENDANT:  Oh, yes.

20          THE COURT:  All right.  As part of the sentence in

21   this case, you will be required to register as a sex offender,

22   and there will be a possibility of enhanced special assessments

23   of up to $5,000 per count unless you are indigent, and up to

24   $50,000 per production count, and up to 17,000 for the

25   possession count pursuant to another section of the Code.

1              Now, are those qualified based upon the ability to

2    pay, Mr. Baldwin?

3              MR. BALDWIN:  Your Honor, I believe those are

4    discretionary on the Court --

5              THE COURT:  Okay.

6              MR. BALDWIN:  -- analysis.

7              THE COURT:  All right.  All right.  So the mandatory

8    is the $100 each, the $5,000, the 50,000, and the 17,000.  The

9    Court has discretion, depending in part upon whether you have

10   the ability to pay them.

11             In addition, the sentence could include restitution,

12   which would mean that -- an order requiring the payment of money

13   to give restitution to any victim who can establish a monetary

14   figure that quantifies their injury.

15             As part of the sentence in this case, there will be an

16   order of forfeiture that will forfeit the equipment on Page 9, a

17   laptop, an iPhone, a Samsung tablet, and you will be required to

18   assist in allowing the government to forfeit those items that

19   are related to the alleged criminal activity.

20             Now, I told you that by entering into this agreement,

21   you and the government waive the right to appeal, with certain

22   limitations.  You have the right to appeal any sentence that

23   exceeds the aggregate statutory maximums to Count Three, Six, or

24   Nine, which is 80 years.  In other words, if I were to sentence

25   you to more than the maximum amount of time that the law allows,

1  of course you could appeal; that would be illegal.  So you have

2  that right to appeal.

3          The government has a right to appeal if I were to

4  sentence you below a statutory mandatory minimum, because that

5  would be illegal.

6          So unless I sentence you to more than the statute said

7  you could receive or less than the statute said you must

8  receive, then neither you nor the government can appeal the

9  sentence I impose for any reason whatsoever.

10         Do you understand that?

11         THE DEFENDANT:  Yeah, yes.

12         THE COURT:  All right.  Now, sir, by pleading guilty,

13 on Page 10, you're promising that you will not obstruct justice,

14 you'll not violate any federal, state, or local law, you'll give

15 truthful information to Mr. Lowe from the Probation Department,

16 who is going to set up a time to speak with you and Ms. Oyer,

17 and you're promising not to withdraw your guilty plea.  If you

18 were to violate those promises, then the government would be

19 able to argue for any sentence and use any information it

20 believes is relevant to the calculation of a proper sentence.

21         Finally, the agreement entered into is between you and

22 the United States government.  I am not part of that agreement.

23 I have to make sure you understand it, which is why we're

24 talking today, sir, all right, but I'm not bound by it.  I have

25 to independently calculate the guidelines and impose a sentence

1  that takes into consideration the statute, the guidelines, and

2  the sentencing factors, such as nature and circumstances of

3  offense, history, characteristics, the ones I just explained.

4        Finally, any promise you made to the government and

5  any promise the government made in return to you is limited to

6  what is written and signed in these documents.  If it's not part

7  of what was written and signed, it's not part of the agreement.

8  Do you understand all that, sir?

9        THE DEFENDANT:  Oh, yes.

10        THE COURT:  All right.  Thank you very much,

11  Mr. Gilbert.  At this time, I'm going to ask that the statement

12  of facts be read into the record.

13        Now, you can tell from the way I've done this that

14  you've got to go slow, and you've got to go loud.  Now,

15  Mr. Gilbert, these are the same facts you've reviewed and

16  signed, sir, so please feel free to go along with them and read

17  along, sir.  I thank you for your patience.  This has not been

18  easy, I know, but I wanted to make sure that we were clear, so

19  bear with me a bit longer for the statement of facts, after

20  which, I'll come back to you, and then we'll talk about the

21  plea, okay?

22        THE DEFENDANT:  Okay.

23        THE COURT:  Yes, ma'am.

24        MS. BOVE:  Thank you, Your Honor.  The undersigned

25  parties stipulate and agree that if this case had proceeded to

1    trial, this office would have proven the following facts beyond

2    a reasonable doubt.  The undersigned parties also stipulate and

3    agree that the following facts do not encompass all of the

4    evidence that would have been presented had this matter

5    proceeded to trial.

6             In late August, 2020, the defendant,

7    Brian Anthony Gilbert, uploaded, shared, and advertised at least

8    two video files of child pornography depicting an approximately

9    7-year-old girl, Victim 1, which Gilbert claimed to have

10   produced on a website, hereinafter referred to as Website A,

11   hosted over the Tor network.

12            The Tor network is a computer network that is designed

13   specifically to facilitate anonymous communication over the

14   internet.  Website A is an online bulletin board dedicated to

15   child pornography.  Users of Website A regularly advertise,

16   share, distribute, and download child pornography.  Gilbert

17   uploaded, shared and advertised two video files of child

18   pornography depicting Victim 1 on Website A from Gilbert's

19   residence in District Heights, Maryland.

20            Specifically, on or about August 26th, 2020, Gilbert

21   posted a thread on Website A under the category "HC Videos /

22   Hard Core."  Gilbert's post contained the following message:

23   "Picked up [Victim 1] today.  She probably be over tomorrow.  I

24   didn't edit the video.  Well, I did put them all together, but I

25   didn't edit out parts that might seem 'Boring,' but I did manage

to record her saying her famous 'nothing line' when her little

sister caught us lol.  Anyways that being said, here is the

video."

Below Gilbert's message was a preview image of a video

and a hyperlink to download the file.  The video Gilbert

uploaded was approximately 9 minutes and 56 seconds in length,

and depicted Victim 1, who was seven years old at the time.

Gilbert is also present and seen with his penis protruding out

of his pants.  Victim 1 used her hand to stroke Gilbert's penis

and places Gilbert's penis in her mouth.  A second younger girl,

Witness 1, can be seen entering the room, at which point

Victim 1 stops.

Within the same thread on Website A, containing the

above-described video, Gilbert posted the following messages:

"I uploaded two videos.  One video was late of last year, and

the second one was earlier this year, if that's what you're

asking.  So far, only those three videos I had uploaded of me

and Victim 1.  If you want the links, I'll post them, but yeah,

I'm naming this series.  Well producing CP [i.e., child

pornography] ain't easy, mate.  I would have uploaded more, but

battery was dying, and then her little sister had it, so I

couldn't record any more.  We did do more but sadly couldn't get

all of the action I wanted to record."

"Parts I didn't/couldn't record ... me busting a nut

on her ass due to how rough she was pushing herself back on my

dick."

"Well, I do include [Witness 1] in the nonsexual stuff ... she is aware of CP and ... She was lying in my bed while I banged her sister in the corner of my room ... I was trying to give her younger sister the tablet, but she wanted to watch CP on both the tablet and the laptop in the corner. She had both tablet and laptop running CP."

"We all know people who produce CP are mostly the targets. I already started that clock, but not to sound like a downer, the area I live at (not going to say where), I'm more scared of being murdered or something else way more than being caught doing what I do."

"It's just I'm limited to what I could do with her when she's around .. I do not have my own place, and with this COVID shit, it just makes it tougher."

On or about August 29th, 2020, Gilbert posted another thread on Website A, under the category "HC Videos / Hard Core." Gilbert's post contained the following message:  "Uploading more of [Victim 1].  Enjoy."  Below Gilbert's message was a preview image of the video and a hyperlink to download the video.  The video Gilbert uploaded was approximately 15 minutes and 1 second in length and depicted Victim 1, who was seven years old at the time.  Gilbert is also present and is seen with his penis pulled out of his pants.  Victim 1 puts Gilbert's penis in her mouth. Later in the video, Gilbert ejaculates on her back.

On September 11th, 2020, law enforcement executed a federal search warrant on Gilbert's residence in District Heights, Maryland.  Gilbert was in the residence at the time that the search warrant was executed.  Law enforcement read Gilbert his *Miranda* rights, which he agreed to waive.  Gilbert told law enforcement that he had produced child pornography of two minors, Victim 1 and Victim 2, and that he distributed that child pornography on the Tor network.

Victim 1 was born in 2013, and Victim 2 was born in 2016.  Specifically, Gilbert told law enforcement that he would video record Victim 1 masturbating his penis and performing oral sex on his penis.  Gilbert stated that he would rub his erect penis against Victim 1's exposed vagina.  Gilbert stated that he recorded Victim 2 performing oral sex on Gilbert's penis. Gilbert told law enforcement that these sexual encounters occurred approximately five times between January, 2019 and August, 2020 in his bedroom at his residence in District Heights, Maryland, and at Victim 1's residence in Maryland.

After recording these sexual encounters on his iPhone 5, Gilbert said he uploaded the majority of the videos to Website A.  Law enforcement seized a number of electronic devices from Gilbert's bedroom during the course of the search warrant on Gilbert's residence that were later discovered to contain child pornography, including the following:  (1) HP laptop, Serial No. CND6310DPY (the "laptop"); (2) black iPhone

1   5s, IMEI 013852000070820, Serial No. C39LP53TFF9R (the "iPhone

2   5s"); and Samsung tablet, IME 359829060330346 (the

3   "tablet")(Collectively, "seized electronic devices").  The

4   iPhone 5s, laptop, and tablet were made or assembled outside the

5   United States and thus were transported in interstate and

6   foreign commerce.

7          A forensic analysis of the seized electronic devices

8   revealed over 2,000 files depicting child pornography as defined

9   by 18 United States Code, Section 2256(8).  The child

10  pornography included that of prepubescent children and children

11  under 12 years old, sadistic or masochistic conduct, including

12  the use of instruments or tools on children and sexual acts

13  between adults and children.

14         Law enforcement was able to identify at least six

15  video files on the seized electronic devices that Gilbert

16  recorded of his sexual encounters and contacts with Victim 1 and

17  Victim 2 in Gilbert's bedroom or in Victim 1's residence.  Based

18  on law enforcement's investigation, those six video files can be

19  described as follows.

20         On December 28th, 2018, Gilbert recorded a video of

21  Victim 1, who was five years old at the time, performing oral

22  sex on Gilbert's penis.  Gilbert recorded the video in his

23  bedroom, using his iPhone 5s, and later saved it to his laptop

24  and named the file with a reference to oral sex.

25         On January 3rd, 2019, Gilbert recorded a video of

1    Victim 2, who was two years old at the time, performing oral sex

2    on Gilbert's penis.  Gilbert recorded the video using his iPhone

3    5s.  The background of this video appears visually similar to

4    Gilbert's bedroom.

5           On June 12th, 2020, Gilbert recorded a video of Victim

6    1, who was seven years old at the time, masturbating Gilbert's

7    penis, and Gilbert rubbed his penis against Victim 1's vagina.

8    Gilbert recorded the video in Victim 1's residence using his

9    iPhone 5s and later saved it to his laptop and named the file

10   with a reference to the sexual conduct depicted therein.

11          On August 25th, 2020, Gilbert recorded a video of

12   Victim 1, who was seven years old at the time, masturbating

13   Gilbert's penis, performing oral sex on Gilbert's penis, and

14   Gilbert rubbing his penis against Victim 1's vagina.  Gilbert

15   recorded the video in his bedroom using his iPhone 5s and later

16   saved it to his laptop.  As described above, on or about

17   August 26th, 2020, Gilbert uploaded, shared, and advertised

18   depictions from this video on Website A.

19          On August 28th, 2020, Gilbert recorded a video of

20   Victim 1, who was seven years old at the time, masturbating

21   Gilbert's penis and performing oral sex on Gilbert's penis.  The

22   video also shows Gilbert rubbing his penis against Victim 1's

23   vagina and ejaculating on Victim 1's back.  Gilbert recorded the

24   video in his bedroom using his iPhone 5s and later saved it to

25   his laptop.  As described above, on or about August 29th, 2020,

1   Gilbert uploaded, shared, and advertised depictions from this

2   video on Website A.

3            On August 29, 2020, Gilbert recorded a video of

4   Victim 1, who was seven years old at the time, masturbating

5   Gilbert's penis and performing oral sex on Gilbert's penis.

6   Gilbert recorded the video in his bedroom using his iPhone 5s.

7            In total, Gilbert knowingly possessed over 600 images

8   and videos of child pornography across the seized electronic

9   devices.  These included images and videos of children engaged

10  in sexually explicit conduct that Gilbert downloaded from the

11  internet, and such images and videos were transported in or

12  affecting interstate or foreign commerce.

13           THE COURT:  All right.  Thank you.

14           Mr. Gilbert, the statement of facts read into the

15  record is the same statement of facts that you have previously

16  reviewed and signed.  Can you confirm for me today that these

17  facts are true?

18           THE DEFENDANT:  Yes.

19           THE COURT:  And can you confirm for me that the

20  government could prove these facts if this case went to trial?

21           THE DEFENDANT:  Yes.

22           THE COURT:  Can you one more time confirm for me that

23  your decision to plead guilty is your own voluntary decision,

24  and no one's tried to force you to do that against your will; is

25  that correct?

```
 1              THE DEFENDANT:  Yes.

 2              THE COURT:  I've gone over a lot of information with

 3   you, sir.  Is there anything that you want me to explain further

 4   that you don't fully understand, that I explained to you so far?

 5              THE DEFENDANT:  No.

 6              THE COURT:  All right.  Having heard what I have said

 7   to you and the statement of facts that has been read into the

 8   record, I want to ask you the following.

 9              Number one, how do you plead to Count Three,

10   Production of Child Pornography, under 18 U.S. Code 2256(2); do

11   you plead guilty or not guilty?

12              THE DEFENDANT:  Guilty.

13              THE COURT:  Thank you.  How do you plead to Count Six,

14   Production of Child Pornography, under 18 U.S. Code 2256(2); do

15   you plead guilty or not guilty?

16              THE DEFENDANT:  Guilty.

17              THE COURT:  And how do you plead to Count Nine,

18   Possession of Child Pornography, under 18 U.S. Code 2256(8); do

19   you plead guilty or not guilty?

20              THE DEFENDANT:  Guilty.

21              THE COURT:  All right.  Thank you, Mr. Gilbert.  I

22   make the following findings of fact.  Mr. Gilbert is here in

23   court with competent counsel.  He has had the opportunity to

24   review the letter and the supporting statement of facts.  He has

25   answered my questions after first being sworn.  I am confident
```

1    that he is competent to exercise his rights, and he has done so

2    voluntarily and with the assistance of counsel.

3           He knows the three charges he's pleading guilty to,

4    the elements of each, the mandatory minimums and statutory

5    maximums for Counts Three and Six and the statutory maximum for

6    Count 20.  He understands that a sentence could include a period

7    of imprisonment, supervised release, restitution, and

8    forfeiture.  I am satisfied he understands his important

9    constitutional rights that he waives or gives up by pleading

10   guilty, and that he also understands that there can be

11   additional collateral consequences of pleading guilty.

12          I have carefully reviewed with him the portions of the

13   guideline stipulation for each of the three counts that are

14   agreed to and those that are in dispute.  The dispute I will

15   have to resolve at the time of sentencing, and he understands

16   that there is no agreement as to his prior criminal history.

17          He also understands that as part of the sentence,

18   there will be a requirement for sex offender registration, and

19   there can be certain enhanced special assessments beyond the

20   $100 special assessment per count.  He also understands that

21   there can be an order of restitution if it can be established

22   that there are victims who had a financial loss caused by the

23   underlying charges he is pleading guilty to.

24          He understands the digital equipment that will be

25   forfeited as part of the forfeiture agreement, and he

1    understands the very limited right to appeal that he and the

2    government have as a result of this agreement.

3            He knows that he is prohibited from obstructing

4    justice, committing a new local, state, or federal offense, or

5    withdrawing his guilty plea after having agreed to the plea.  He

6    knows that I am not a party to the agreement and that whatever

7    he promised the government and the government promised him is

8    written and signed in these agreements.

9            And I am satisfied that he has carefully listened to

10   the statement of facts which he previously reviewed and signed,

11   and if those facts were proved at trial, they would support

12   the -- proof beyond a reasonable doubt for the essential

13   elements of each of these three offenses.

14           Now, for the people who are in the audience today who

15   are not counsel, or law enforcement, or security, or court

16   personnel, for all guilty pleas, we have to have a mandatory

17   sealed portion, where no one can be in the courtroom except the

18   parties, the defendant, and the security folks, so this will not

19   take very long, and when we're done, you can come back in, but

20   right now, I have to ask if you will excuse yourself briefly,

21   and then we'll reopen the door, and then you'll be able to come

22   back in.

23      (Conference at the bench.)

24      It is the policy of this Court that every guilty plea and

25   sentencing proceeding include a bench conference concerning

1    whether the defendant is or is not cooperating.

2         (Open court.)

3         THE COURT:  Mr. Gilbert, after you have had the

4    opportunity to meet with the probation officer, then the

5    probation officer will prepare a presentence report.  A copy

6    will go to Ms. Oyer, for you to be able to review it with her

7    and make any objections or requests for modification.  The

8    government can do the same.  If there is any disagreement, as I

9    said, and there are some disagreements, I will have to resolve

10   those at the time of sentencing.

11        In addition, when we come back for the sentencing,

12   I'll have reviewed any materials filed by the lawyers and hear

13   from any victims who want to be heard, arguments from counsel,

14   and you will have the right to speak to me before I announce the

15   sentence.  You have no obligation to do so, and if you choose

16   not to, there will be no adverse inference.

17        At the time of the sentencing, as I said, I will have

18   ruled on any disputed matters affecting sentencing, and in

19   addition, will calculate the guidelines, announce the

20   calculation, apply the sentencing factors under 18 U.S. Code

21   3553 and, taking into consideration everything that I have heard

22   at sentencing, will sentence you to a sentence that is

23   sufficient, but not greater than necessary, to support the

24   charges that you have been found guilty, consistent with the

25   goals of sentencing established by Congress.

1          Once I have sentenced you, the government will dismiss

2    any outstanding charges and the existing charges against you

3    that have -- are different from those that you have pleaded

4    guilty to, and you will, if you believe that there is an

5    unwaived right to appeal, be able to do so within 14 days of the

6    entry of any judgment of conviction or appeal by the government.

7          Now, Counsel, I'm going to sign this.  Do we have the

8    sentencing schedule?  We've got a lot of disputes in this case,

9    and so I expect that there will be a good deal in the sentencing

10   memoranda.  The deadlines in these sentencing orders give me

11   very little time to review the materials, because they're not

12   complete until very shortly after -- before the actual sentence.

13   The earlier you can get your submissions in, the more time that

14   I will have to review them, but if I don't have enough time to

15   review them to my satisfaction, then I will continue the

16   sentencing, because I will never sentence someone unless I feel

17   prepared for the sentence and have fully considered the

18   information.

19          You should, if you would, please, exercise as much

20   care as you can to make your sentencing submissions as clear as

21   possible.  In the event that there are exhibits, if there are

22   key portions of the exhibits that you believe are central to

23   what your position is, you should highlight them to expedite my

24   ability to find in those materials what it is that you deem to

25   be important.  And make your submissions as clear and as well

1   organized as you can.  That will enhance the chances that we'll

2   be able to actually have the sentencing on the day that it's

3   scheduled, but given the disputes that we have, I do have some

4   concerns about that; I just want to share that with you now, up

5   front.

6           So with that in mind, is there anything further we

7   need to do on this case from the perspective of the government?

8           MR. BALDWIN:  No, Your Honor, thank you.

9           THE COURT:  And anything from the defense?

10          MS. OYER:  No, Your Honor, thank you.

11          THE COURT:  All right.  Signed the order.

12          Did we already -- has there already been a Due Process

13  Protection Act order issued in this case?

14          THE COURTROOM DEPUTY:  Yes, Your Honor.

15          THE COURT:  It has?  Okay.  Well, we've already got

16  that done.  In that case, then, we're at recess.  I thank

17  counsel for their work today in preparing this and for all the

18  court staff for their assistance, and we are now in recess.

19          THE COURTROOM DEPUTY:  This Honorable Court stands

20  adjourned.

21      (The proceedings were adjourned at 4:04 p.m.)

22

23

24

25

1               CERTIFICATE OF OFFICIAL REPORTER

2       I, Patricia Klepp, Registered Merit Reporter, in and for

3  the United States District Court for the District of Maryland,

4  do hereby certify, pursuant to 28 U.S.C. § 753, that the

5  foregoing is a true and correct transcript of the

6  stenographically-reported proceedings held in the above-entitled

7  matter and the transcript page format is in conformance with the

8  regulations of the Judicial Conference of the United States.

9                 Dated this 1st day of February, 2022.

10

11

12                       /s/
                  PATRICIA KLEPP, RMR

13                  Official Court Reporter

14

15

16

17

18

19

20

21

22

23

24

25